---

AVA ZEHM, individually and on
behalf of others similarly
situated,

        Plaintiff,

v.

MORGAN PROPERTIES,
MOORESTOWNE WOODS APARTMENT
ASSOCIATES, LLC d/b/a
MOORESTOWNE WOODS APARTMENT
ASSOCIATES, LP, and NWP
SERVICES CORPORATION,

        Defendants.[1]

1:17-cv-1758 (NLH/KMW)

**OPINION**

---

**APPEARANCES**:

LEWIS G. ADLER
LAW OFFICE OF LEWIS ADLER
26 NEWTON AVENUE
WOODBURY, NJ 08096
    On behalf of Plaintiff

PAUL DEPETRIS
LAW OFFICE OF PAUL DEPETRIS
532 ROUTE 70 WEST, 2ND FLOOR
CHERRY HILL, NJ 08002
    On behalf of Plaintiff

RACHEL C. HEINRICH
DANIEL S. BERNHEIM
WILENTZ GOLDMAN & SPITZER, P.A.
TWO PENN CENTER
SUITE 910
PHILADELPHIA, PA 19102

---

[1] According to Defendants, Morgan Properties Management Company, LLC was improperly pleaded as Morgan Properties and Moorestown Woods Apartment Associates, LLC was improperly pleaded as Moorestown Woods Apartment Associates, LLC d/b/a Moorestown Woods Apartment Associates, LP.

On behalf of Defendants Morgan Properties Management
Company, LLC and Moorestowne Woods Apartment Associates,
LLC

DAVID GORVITZ
ORLOFF LOWENBACH STIFELMAN & SIEGEL PA
101 EISENHOWER PARKWAY
SUITE 400
ROSELAND, NJ 07068
    On behalf of Defendant NWP Services Corporation

JAIKARAN SINGH
DENTONS US LLP
4655 EXECUTIVE DRIVE, SUITE 700
SAN DIEGO, CALIFORNIA 92121
    On behalf of Defendant NWP Services Corporation

**<u>HILLMAN</u>, District Judge**

This purported class action predominantly concerns two
allegedly illegal provisions of a residential lease: an
attorneys' fees provision and a utility addendum regarding the
allocation of water charges.  Plaintiff contends these
provisions violate the New Jersey Consumer Fraud Act ("CFA") and
the New Jersey Truth in Renting Act ("TRA").  Defendants Morgan
Properties Management Company, LLC ("Morgan Properties") and
Moorestown Woods Apartment Associates, LLC ("MWAA")
(collectively "the Morgan Defendants") request this Court stay
the counts that pertain to the attorneys' fees provision and
request dismissal of the counts that pertain to the utility
addendum.[2]  Defendant NWP Services Corporation ("NWP") also

---

[2]    An unrelated CFA claim is not part of the Morgan
Defendants' motion.

2

requests dismissal of the claims against it, all of which
pertain to the utility addendum.

For the reasons that follow, the Court will deny the Morgan
Defendants' motion for partial abstention and will grant the
Morgan Defendants' motion for partial dismissal of the
complaint.  The Court will grant NWP's motion to dismiss as
well.  The Court will not grant Plaintiff leave to amend the
complaint, finding such an amendment would be futile.

**I.**

The Court takes its facts from Plaintiff's January 18, 2017
complaint, filed in the New Jersey Superior Court, Law Division
("Law Division").  Plaintiff lived in an apartment in Moorestown
owned by MWAA.  The complex consisted of approximately 172
residential units and was managed by Morgan Properties.
Plaintiff executed her first lease with MWAA in 2014 for the
rental of an apartment.  Plaintiff renewed her lease in 2015.

As part of her leases, Plaintiff signed a utility addendum,
which provided that charges for water would be based on the
number of bedrooms in each resident's apartment unit.  NWP was
the third-party billing service provider for this utility.
Plaintiff's leases also contained a provision that stated, in
pertinent part, that with regard to a breach of the lease, if an
attorney is employed, including in-house counsel, the resident
was required to pay $400 in attorneys' fees.  That amount could

be reduced to $200 "in the event an eviction action is filed . . . for non-payment of rent, and [the tenant] pay[s] all rent due."[3]

The Morgan Defendants filed a complaint in January 2016 against Plaintiff for rent due. The complaint declared $873.85 due and owing: $331.65 for rent due, a $142.20 late charge, and $400 in attorneys' fees.

Following that litigation, Plaintiff filed a class action complaint against Defendants, which was removed to federal court on March 15, 2017.[4] The complaint alleged:

| | |
|---|---|
| Count One: | violation of the TRA based on the attorneys' fees provision (against Morgan Defendants) |
| Count Two: | violation of the TRA based on the utility addendum (against Morgan Defendants) |
| Count Three: | violation of the CFA based on the attorneys' fees provision (against Morgan Defendants) |
| Count Four: | civil conspiracy based on the attorneys' fees provision (against Morgan Defendants) |
| Count Five: | violation of the CFA based on the utility addendum (against all Defendants) |
| Count Six: | civil conspiracy based on the utility addendum (against all Defendants) |

---

[3]   Morgan Properties has a New Jersey legal department staffed with in-house legal counsel.

[4]   This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Count Seven: declaratory judgment (against all Defendants)

Count Eight: violation of the CFA (against Morgan Defendants)[5]

The Morgan Defendants filed an April 5, 2017 motion for partial abstention and partial dismissal of the complaint. NWP then filed an April 26, 2017 motion to dismiss.

**II.**

The Morgan Defendants ask this Court to stay Counts One, Three, Four, and, in part, Count Seven[6] of this action under the Colorado River abstention doctrine, arguing there is similar litigation pending in state court.[7] The matter Green v. Morgan

---

[5] Count Eight is not subject to either of the pending motions.

[6] The Morgan Defendants request a stay of Count Seven "to the extent it seeks a declaratory judgment that the lease is void as a result of the allegedly illegal attorney's fee provision."

[7] From the Court's purview, it appears unsettled whether a partial stay is an appropriate disposition under Colorado River in the Third Circuit. Compare Guenveur v. State Farm Mut. Auto. Ins. Co., 551 F. Supp. 1044, 1046 (D. Del. 1982) (finding that additional counts alone do "not obviate the parallel nature of the two actions"), with Trent v. Dial Med., 33 F.3d 217, 224 (3d Cir. 1994) ("[W]hen a federal court case involves claims that are distinct from those at issue in a state court case, the cases are not parallel and do not justify Colorado River abstention.").

While other courts have found such a stay appropriate, see, e.g., In re Countrywide Fin. Corp. Derivative Litig., 542 F. Supp. 2d 1160, 1171 (C.D. Cal. 2008), this Court will deny the stay on other grounds and therefore need not reach this issue.

Properties, pending in the Law Division,[8] is another purported

class action.  The gravamen of both actions is that the

attorneys' fees provision allows the Morgan Defendants to

recover an unreasonable and excessive amount of attorneys' fees,

which do not reflect the actual time spent on eviction matters.

The Green plaintiffs brought claims for unlawful eviction

proceedings under N.J.S.A. 2A:18-61.6, consumer fraud, and

negligence.  On February 4, 2011, the Law Division dismissed the

plaintiffs' complaint with prejudice, finding it failed to state

a claim upon which relief may be granted.  Green v. Morgan

Props., No. 4158-10, 2011 WL 7986626 (N.J. Super. Ct. Law Div.

Feb. 4, 2011), rev'd, No. 4158-10, 2011 WL 5212388 (N.J. Super.

Ct. App. Div. Nov. 3, 2011), aff'd in part, rev'd in part, 73

A.3d 478 (N.J. 2013).

On appeal, the Appellate Division reversed, finding there

to be "a cause of action based on plaintiffs' allegation that

the landlords have imposed charges on their tenants, denominated

---

[8]    At the time these motions were filed, the matter was
currently pending in both the Law Division and the New Jersey
Superior Court, Appellate Division ("Appellate Division").
While the parties have not indicated a change in the status of
these proceedings, from the Court's research, it appears that
the matter is now only before the Law Division.  On September
21, 2017, the Appellate Division rendered a decision regarding
class certification and remanded the matter back to the Law
Division.  Green v. Morgan Props., No. 1247-16, 2017 WL 4171613,
at *10 (N.J. Super. Ct. App. Div. Sept. 21, 2017).  It appears
certification is being sought before the New Jersey Supreme
Court on this issue.

as attorney's fees, that exceed the landlords' actual cost for in-house legal representation." <u>Green</u>, 2011 WL 5212388, at *1. The Appellate Division found the plaintiffs thus stated a claim under the CFA.  <u>Id.</u>  The New Jersey Supreme Court affirmed, as related to the corporate defendants, that the CFA claim survived a motion to dismiss, but found the count was properly dismissed as to the individual defendant.  <u>Green</u>, 73 A.3d at 493.  The case was then remanded to the Law Division.

According to the Morgan Defendants' counsel's certification, on December 7, 2015, the <u>Green</u> plaintiffs filed a motion for partial summary judgment and motion for class certification in the Law Division.  Both were denied.  The plaintiffs then filed a petition for interlocutory appeal in the Appellate Division, which was granted as to the Law Divison's denial of class certification.  In September 2017, the Appellate Division found a narrowed class would be appropriate and remanded back to the Law Division.  <u>Green</u>, 2017 WL 4171613, at *10.  With this background, the Court now addresses whether this is an appropriate case for application of <u>Colorado River</u> abstention.

> Whether abstention is appropriate is a two-part inquiry. The initial question is whether there is a parallel state proceeding that raises "substantially identical claims [and] nearly identical allegations and issues."  If the proceedings are parallel, courts then look to a multi-factor test to determine whether "extraordinary circumstances" meriting abstention are present.

Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571
F.3d 299, 307-08 (3d Cir. 2009) (alteration in original) (first
quoting Yang v. Tsui, 416 F.3d 199, 204 n.5 (3d Cir. 2005); and
then quoting Spring City Corp. v. Am. Bldgs. Co., 193 F.3d 165,
171 (3d Cir. 1999)). "The doctrine is to be narrowly applied in
light of the general principle that 'federal courts have a
strict duty to exercise the jurisdiction that is conferred upon
them by Congress.'" Id. at 307 (quoting Quackenbush v. Allstate
Ins. Co., 517 U.S. 706, 717 (1996)).

The Court first looks to whether the federal and state
cases are parallel. See, e.g., Trent, 33 F.3d at 223.
"Generally, cases are parallel so as to justify abstention under
Colorado River when they involve the same parties and claims."
Id. However, the Third Circuit has applied Colorado River
abstention even where the parties were not "perfectly
identical," but were "substantially the same." Barron v.
Caterpillar, Inc., No. 95-5149, 1996 WL 368335, at *2 n.2 (E.D.
Pa. June 26, 1996); accord Mamouzette v. Jerome, No. 13-117,
2017 WL 3083628, at *8 (D.V.I. July 19, 2017) ("[C]omplete
identity of parties is not required to satisfy the first prong.
Courts look past the names and number of parties in determining
whether there is an identity of parties for purposes of the
abstention doctrine."); Glades Pharm., LLC v. Call, Inc., No.

8

04-4259, 2005 WL 563726, at *7 (E.D. Pa. Mar. 9, 2005) ("Two actions may involve different parties and still be parallel so long as there is a substantial similarity between the two actions.").

In this federal court action, Plaintiff is Zehm, both individually and on behalf of others similarly situated. The Defendants are Morgan Properties, MWAA, and NWP. In the state court action, the plaintiffs are Darnice Green, Mathew Blumberg, Michael Permenter, and Beth Permenter, both individually and on behalf of others similarly situated. The state court plaintiffs attempted to define the class as follows:

> 1) Individuals who have resided in the six years prior to the filing of the complaint in any of the properties managed or owned by the Morgan and East Coast Defendants; and 2) who were charged attorneys fees and/or other costs which were in excess of the amount actually incurred and/or in excess of the amount allowed by law.[9]

The defendants in the state court action are Morgan Properties, Morgan Management Mitchell L. Morgan, Inc., Rosemary Spohn, East Coast The Willows, LLC, and East Coast Colonial Apartments, LLC.

---

[9] On September 21, 2017, the Appellate Division ruled on the issue of class certification. It found the "proposed class of all tenants who were charged attorneys' fees under the 2007 and 2010 Morgan leases [wa]s not maintainable," as "[t]he very real threat of counterclaims against class members for unpaid rent exceeding any recovery makes a class including such tenants impermissibly broad." Green, 2017 WL 4171613, at *6. However, the Appellate Division found "[a] narrowed class, drawn so as to exclude those tenants against whom defendants could assert counterclaims overwhelming the common claims of the class, [wa]s . . . appropriate." Id. at *10.

In a class action, "'[e]xact parallelism' is not required," particularly "where the interests of both the named plaintiffs and the identical putative classes they seek to represent are congruent, notwithstanding the nonidentity of the named parties." Romine v. Compuserve Corp., 160 F.3d 337, 340 (6th Cir. 1998) (quoting Nakash v. Marciano, 882 F.2d 1411, 1416 (9th Cir. 1989)). "[W]here such congruence of both interests and allegations exists in duplicative class actions, the nonidentity of the named class representatives should in no way undermine a court's determination that the suits in question are otherwise parallel." Id. Thus, as a preliminary matter, the different named parties in the two actions does not bar the Court's application of Colorado River abstention.

However, the putative classes still must be substantially similar. The Third Circuit has found plaintiffs "effectively the same" where the federal plaintiff was part of a class in the state action. Trent, 33 F.3d at 224. If Plaintiff falls within the state action purported class, that could render the plaintiffs "effectively the same." The Morgan Defendants contend Plaintiff would be included in the purported class in the state action.

Of particular relevance in determining the similarity of the purported classes and whether Plaintiff falls within the state action purported class is the language defining the class

as "[i]ndividuals who have resided in the six years prior to the
filing of the complaint in any of the properties managed or
owned by the Morgan and East Coast Defendants."  The state court
complaint was filed on August 19, 2010.  While Plaintiff resided
in a property managed by Morgan Properties, she does not fall
within the class of plaintiffs who resided in such property
between August 19, 2004 and August 19, 2010.  Rather, Plaintiff
appears to have signed her first lease for an apartment at
Moorestowne Woods on August 1, 2014, well after the filing of
the state court complaint on August 19, 2010.

Further, the federal court action attempts to define the
class, in relevant part, as follows:

> (1) All New Jersey citizens who received leases from
> MWAA (or Morgan acting on behalf of MWAA) with the same
> attorney's fee language as the lease that violate the
> TRA from a period of six [6] years prior to the filing
> of the complaint. . . . (3) All New Jersey citizens who
> received leases from MWAA (or Morgan acting on behalf of
> MWAA) with the same attorney's fee language as the lease
> and who were charged attorney's fees by MWAA or Morgan
> under those leases in violation of the CFA and from a
> period of six [6] years prior to the filing of the
> complaint. . . .[10]

The federal court complaint was filed on January 18, 2017,
and thus the six year period extended from 2011 to 2017.  In
terms of the time period covering the class claims, there would
appear to be no overlap of the purported classes.  Accordingly,

---

[10]    The omitted portions of the definition of the purported
class relate to those stemming from the utility addendum.

the Court does not find the putative classes are substantially similar.  Cf. In re Countrywide Fin. Corp. Derivative Litig., 542 F. Supp. 2d at 1170 (finding that the "nonidentity of the named class representatives should in no way undermine a court's determination that the suits in question are otherwise parallel" where "both putative classes [were] identically composed of Countrywide common-stock holders" (quoting Romine, 160 F.3d at 340)).  This leads the Court to conclude that the cases are not parallel, and that Colorado River abstention is inapplicable.

Looking to the identity of defendants and claims only renders further support for this conclusion.  The Third Circuit has found defendants were "essentially identical" where the federal action included the same defendant as the state action, but the state action included additional defendants.  Trent, 33 F.3d at 224.  While there is one common defendant between both the state and federal actions, there are additional defendants in the state action as well as additional defendants in the federal action.[11]  Relevant to the counts at issue, Defendant MWAA is a federal defendant who is not a state defendant. Morgan Management Mitchell L. Morgan, Inc., Rosemary Spohn, East Coast The Willows, LLC, and East Coast Colonial Apartments, LLC

---

[11]    The Court notes that NWP, a defendant in the federal action, is not a party to the claims regarding the attorneys' fees provision.

are all defendants in the state action who are not defendants in the federal action.  This differs from <u>Trent</u>, in which the only additional defendants were parties to the state action – a significant distinction, as the state court would still be able to resolve the dispute as to all of the federal defendants.  If the Court were to stay this action, any judgment in state court would have no effect on MWAA's liability.

Further, this Court does not find the federal and state actions concern the same claims.  "The courts have been cautious in finding actions that are merely similar to be duplicative." <u>Certain Underwriters at Lloyds, London v. Ross</u>, No. 98-1037, 1998 WL 372304, at *2 (E.D. Pa. June 17, 1998).  "[W]hile certain issues to be litigated in the . . . federal claim may be identical to issues that have been or will be raised . . . in state court, the lack of identity of all issues necessarily precludes <u>Colorado River</u> abstention."  <u>Univ. of Md. v. Peat Marwick Main & Co.</u>, 923 F.2d 265, 276 (3d Cir. 1991).

The state court complaint alleged three counts:

Count One:      Unlawful Eviction Proceedings, N.J.S.A. 2A:18-61.6.[12]

Count Two:      Consumer Fraud

---

[12]     It appears that, after remand from the New Jersey Supreme Court, this claim was not re-pled and was thus abandoned. <u>Green</u>, 2017 WL 4171613, at *3 n.7.

Count Three:    Negligence[13]

The Morgan Defendants ask for a stay of this action solely with regard to Counts One, Three, Four, and, in part, Seven:

Count One:      TRA violation

Count Three:    CFA violation

Count Four:     civil conspiracy

Count Seven:    declaratory judgment

The only common claim between the two actions is Count Two of the state complaint and Count Three of the federal complaint, both of which claim consumer fraud.[14]  Thus, preliminarily, a stay would be inappropriate as to Counts One, Four, and Seven.

Looking solely to the consumer fraud counts, even though they are facially similar, there are different lease provisions at issue.  According to the Supreme Court decision in Green, the original lease provision in the state action read as follows:

> If Tenant fails to pay the entire amount of rent due and owing, and the services of an attorney are thereby required to resolve the matter, either by court appearance, preparation of a consent to be filed with the court or for any other purpose, then a reasonable attorney's fee of four hundred dollars ($400.00) is due

---

[13]   The state plaintiffs did not seek class certification on this claim.  Green, 2017 WL 4171613, at *3 n.7.

[14]   The federal complaint specifically pleads under the New Jersey CFA.  While the state complaint does not say so explicitly, the Court assumes the CFA provides the basis for the state court consumer fraud claim.  See Green, 73 A.3d at 481 ("[P]laintiffs asserted that they were entitled to relief pursuant to the Consumer Fraud Act . . . .").

and payable as additional rent by the Tenant. If the attorney's fee exceeds four hundred dollars ($400.00) then the Tenant will be required to pay the entire amount of reasonable attorney's fees due and owing to the attorney. In the event Tenant receives a Summons and Complaint and pays all rent due, including late charges and a legal fee of two hundred dollars ($200.00), by certified check or money order prior to the court date so that Landlord's attorney is not required to make an appearance on behalf of the Landlord, Tenant shall not be liable for the remaining two hundred dollars ($200.00) legal fee. However, the four hundred dollars ($400.00) attorney's fee is due and owing even if Tenant makes full payment on the day of the court appearance, because the attorney will be required to make an appearance on behalf of Landlord.

Green, 73 A.3d at 482.

In an amended version, the provision stated:

If the Landlord uses the services of an attorney (including in-house counsel) for any good cause in relation to the enforcement or defense of any terms of this Lease, or in any relation to this tenancy, whether or not litigation is commenced, Resident must pay Landlord's attorney fees in the amount of four hundred dollars ($400) plus costs as Additional Rent for each cause in which the attorney's services are engaged.

Id. at 482-83.

The 2015 lease provision, relevant to the federal action,

is as follows:

LEGAL FEES. If we believe, in our sole discretion that (a) you have breached this Lease in any material respect, including, but not limited to, the failure to pay rent in a timely manner, (b) you have committed any act that is grounds for eviction, or (c) a dispute has arisen in connection with the negotiation of a new lease or lease extension, we may choose to engage the services of an attorney (including in-house counsel) to represent, advise and otherwise assist us. If we choose to engage the services of an attorney (including in-house counsel), with regard to such alleged breach of this

Lease, act, or dispute, you must pay reasonable attorney fees and costs in the amount of four hundred dollars ($400) as Additional Rent for each matter in which the attorney's services are engaged.

However, in the event an eviction action is filed against you solely for non-payment of rent, and you pay all rent due, including late charges and a legal fee of two hundred dollars ($200.00), by certified check or money order prior to the court date, you shall not be liable for the remaining two hundred dollars ($200.00) legal fee. However, the four hundred dollars ($400.00) legal fee is due and owing even if you make full payment on the day of the court hearing, because the attorney will be required to make an appearance on our behalf.

If Resident is successful in any action or summary proceeding arising out of this Lease, Resident shall recover attorney's fees or expenses or both from the Landlord to the same extent the Landlord is entitled to recover attorney's fees or expenses, or both as provided in this Lease. Resident will not be deemed to have prevailed by satisfying a past due balance prior to entry of a judgment for possession unless Resident has a meritorious defense.

While quite similar in substance (and in the actual written language in places), the lease provisions at issue are distinct. Where two cases "employ[] substantially different 'approaches' and might 'achieve potentially different results,'" Colorado River abstention is inappropriate. See Trent, 33 F.3d at 224. Where the legality of a lease provision is at issue, the exact wording of the particular provision is paramount. The different wording of these provisions renders them distinct, and could plausibly render "potentially different results." Id. Coupled with the distinctions between the defendants and the putative classes, the Court does not find a stay appropriate.

This case is similar to <u>University of Maryland v. Peat</u>
<u>Marwick Main & Co.</u>, 923 F.2d 265.[15]  As the <u>Trent</u> court noted,
<u>Colorado River</u> abstention did not apply in <u>University of</u>
<u>Maryland</u> because "the parties and claims in each of the two
cases differed."  <u>Trent</u>, 33 F.3d at 224.  The classes of
policyholders differed, and an additional defendant was a party
to the state court action that was not a party to the federal
action.  <u>Id.</u>  Further, the state action "alleged fewer legal
bases for relief than did the federal court suit."  <u>Id.</u>  Because
"the policyholders' claims in the federal court case were
'distinct' from those asserted in the [state] case," the court
found a "lack of identity of all issues" and "no theoretical
obstacle to both actions proceeding independently."  <u>Id.</u>
(quoting <u>Univ. of Md.</u>, 923 F.2d at 276); <u>Univ. of Md.</u>, 923 F.2d
at 276 ("[W]hile certain issues to be litigated in the . . .
federal claim may be identical to issues that have been or will
be raised . . . in state court, the lack of identity of all
issues necessarily precludes <u>Colorado River</u> abstention.").

Accordingly, the Court finds the cases are not sufficiently
parallel to allow for application of <u>Colorado River</u> abstention.

_____

[15]    While the <u>University of Maryland</u> decision primarily
concerned <u>Burford</u> abstention, it also discussed <u>Colorado River</u>
abstention.  Moreover, the Third Circuit in <u>Trent</u> cites
<u>University of Maryland</u> with approval in discussing <u>Colorado</u>
<u>River</u> abstention.

The Court thus does not reach the factor-test regarding application of the Colorado River abstention doctrine.[16]

In declining to apply Colorado River abstention, the Court reiterates that the Colorado River abstention doctrine "is to be narrowly applied." Nationwide Mut. Fire Ins. Co., 571 F.3d at 307 (quoting Quackenbush, 517 U.S. 706). In determining whether a stay is appropriate, this Court's "task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under Colorado River to justify the surrender of that jurisdiction." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25-26 (1983). This is not such an exceptional case.

### III.

The Morgan Defendants also ask this Court to dismiss with prejudice Counts Two, Five, Six, and, in part,[17] Seven of the

---

[16]  If a court determines proceedings are parallel, the next step is to "look to a multi-factor test to determine whether 'extraordinary circumstances' meriting abstention are present." Nationwide Mut. Fire Ins. Co., 571 F.3d at 307-08 (alteration in original) (first quoting Yang, 416 F.3d at 204 n.5; and then quoting Spring City Corp., 193 F.3d at 171).

[17]  The Morgan Defendants seek a dismissal of Count Seven "to the extent it seeks a declaratory judgment that the leases are null and void as a result of the allegedly illegal utility addendum."

complaint.  Plaintiff brings these counts based on the allegedly illegal utility addendum.

## A.

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim.  Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977).  However, "the Federal Rules of Civil Procedure . . . do require that the pleadings 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Baldwin Cty. Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim."

Bell Atl. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting
Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft
v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly
expounded the pleading standard for 'all civil actions'
. . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.
2009) ("Iqbal . . . provides the final nail in the coffin for
the 'no set of facts' standard that applied to federal
complaints before Twombly.").

**B.**

The relevant counts of the complaint for the Morgan
Defendants' partial motion to dismiss are as follows:

Count Two:      TRA violation

Count Five:     CFA violation

Count Six:      civil conspiracy

Count Seven:    declaratory judgment

At issue is the leases' utility addendum.  The 2014 and
2015 utility addendums identically provide: "Water and sewer
service associated with Resident's apartment will be provided by
The Township of Moorestown and billed in the Resident's name,
directly to the resident, by NWP.  Charges for water shall be
based on the number of bedrooms in Resident's apartment unit."
The parties define the allocation method outlined in the last
sentence of the utility addendum as a ratio utility billing
system ("RUBS").  At issue is the legality of RUBS.

1. **Whether Plaintiff states a claim for a CFA violation against the Morgan Defendants based on the utility addendum (Count Five).**

N.J.S.A. 56:8-2 provides:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . .

"To state a prima facie case under the CFA, a plaintiff must demonstrate three elements: (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss." Payan v. Greenpoint Mortg. Funding, 681 F. Supp. 2d 564, 572 (D.N.J. 2010). "Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations." Cox v. Sears Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994). "The first two are found in the language of N.J.S.A. 56:8-2, and the third is based on regulations enacted under N.J.S.A. 56:8-4." Id. The Court finds Plaintiff did not sufficiently plead the Morgan Defendants engaged in unlawful conduct.

Preliminarily, the Morgan Defendants argue the CFA does not apply to them as they are not sellers of a product or service.

The Court does not view the Morgan Defendants as "middlemen[]" who were reimbursed for their costs . . . of supplying water to their tenants," as the Morgan Defendants argue, but rather as the owner/manager of an apartment complex that entered into a contract with Plaintiff, containing the allegedly unlawful utility addendum at issue. "A party may, in certain circumstances, satisfy the 'unlawful commercial practice' element of the CFA by presenting evidence of an agreement containing an unlawful term." Manahawkin Convalescent v. O'Neill, 85 A.3d 947, 961 (N.J. 2014).[18]

Under the CFA, the unlawful conduct must occur "in connection with the sale or advertisement of any merchandise or real estate." N.J.S.A. 56:8-2. N.J.S.A. 56:8-1 defines "sale" to "include any sale, rental or distribution, offer for sale, rental or distribution or attempt directly or indirectly to sell, rent or distribute." Accordingly, a lease – as a rental of real estate – falls within the scope of the term "sale." Further, New Jersey courts have found "[t]he CFA is applicable to the landlord/tenant relationship." Wozniak v. Pennella, 862

---

[18]  The Court similarly rejects the argument that Plaintiff's signing of the lease and utility addendum bars her CFA claim, and that the CFA claim must fail because the utility addendum does not have a capacity to mislead. Regardless of whether or not the utility addendum is misleading, the allegedly illegal use of RUBS is sufficient to bring Plaintiff's claim under the umbrella of the CFA.

A.2d 539, 546 (N.J. Super. Ct. App. Div. 2004). Indeed, "[t]he
plain language of the statute in its present form requires the
conclusion that it applies to landlords as 'sellers' and tenants
as 'consumers' since it applies to the rental of real estate."
49 Prospect St. Tenants Ass'n v. Sheva Gardens, 547 A.2d 1134,
1142 (N.J. Super. Ct. App. Div. 1988) (finding that a "landlord
of a 55-unit, four-story apartment building, as well as several
other apartment buildings, [is] obviously engaged in a
commercial enterprise with the tenants as consumers"). Thus,
the Court finds the CFA applicable to the Morgan Defendants.

Much of Plaintiff's argument regarding a violation of the
CFA rests on the New Jersey Board of Public Utilities (BPU)
purportedly having prohibited RUBS. Accordingly, the Court must
determine whether the Morgan Defendants are subject to
regulation by the BPU. N.J.S.A. 48:2-13(a) governs the
jurisdiction of the BPU. "The board shall have general
supervision and regulation of and jurisdiction and control over
all public utilities as defined in this section . . . ."
N.J.S.A. 48:2-13(a). Thus, the question is whether the Morgan
Defendants constitute public utilities such that they fall under
the jurisdiction of the BPU.

N.J.S.A. 48:2-13(a) defines "public utility," in relevant
part, as follows:

[E]very    individual,    copartnership,    association,

corporation or joint stock company, . . . that now or
hereafter may own, operate, manage or control within
this State any . . . water . . . for public use, under
privileges granted or hereafter to be granted by this
State or by any political subdivision thereof.

N.J.S.A. 48:2-13 "requires the existence of two conditions

in order to bring a water supplier within the definition, i.e.,

(1) that it owns, operates, manages or controls a water system

for public use, and (2) that it does this under privileges

granted by the State or any of its political subdivisions."

Lewandowski v. Brookwood Musconetcong River Prop. Owners' Ass'n,

181 A.2d 506, 512 (N.J. 1962); accord Petition of N.J. Nat. Gas

Co., 263 A.2d 174, 178 (N.J. Super. Ct. App. Div. 1970).[19]

"Whether a water system is operated 'for public use'

depends upon the character and extent of the use and not upon

agreements or understandings between the supplier and those

supplied." Lewandowski, 181 A.2d at 513.

If a water supplier diverts significant quantities from
the State's natural resources for the ultimate use of a
broad group of consumers, the system is operating for
public use; and the fact that the supplier is under no
obligation to supply the water diverted by it to the
general public or any portion thereof is immaterial with
respect to the jurisdiction of the Board.

Id.

---

[19]    The Court notes the language of the statute has changed
since these cases were decided.  However, the substance of the
version in place in the 1960s and the 1970s is sufficiently
consistent with the current version such that the Court finds
these cases still control.

In a Law Division case, <u>Antique Village Inn, Inc. v.</u>
<u>Pacitti, Robins & Anglin, Inc.</u>, 390 A.2d 681 (N.J. Super. Ct.
Law Div. 1978), the Law Division was faced with the issue of
whether a mall was subject to regulation by the BPU.  <u>Id.</u> at
682.  The Law Division phrased the issue as "whether the
landlord has the right to purchase energy from a utility and
distribute the same to its tenants at a different (and
presumably greater) rate without being compelled to submit to
[BPU] jurisdiction."  <u>Id.</u>  The Law Division found "the landlord
is not so compelled."  <u>Id.</u>

The Law Division relied in large part on <u>Public Service</u>
<u>Commission of Maryland v. Howard Research and Development Corp.</u>,
314 A.2d 682 (Md. Ct. App. 1974) and an American Law Reports
Annotation, which provides:

> It is not uncommon for landlords, particularly those
> with numerous tenants or those whose tenants consume
> large quantities of electricity, gas, water, or similar
> services, to provide their tenants with such services
> themselves rather than relying upon the local public
> service utilities to supply their tenants. . . .
>
> . . . . [S]tate public service commissions charged with
> regulating public utilities are attempting, with
> increasing frequency, to extend their regulatory
> jurisdiction to those who furnish such services.  Public
> utilities have been singled out for special regulation
> because they ordinarily operate as monopolies.
> Regulatory commissions have been given the task of
> providing to the public utilities those elements –
> especially control of rates and standards of service –
> which are provided by competition in most other
> enterprises.  Whether or not a particular enterprise is
> subject to public utility regulation is generally

determined by whether or not the agency conducting the enterprise holds itself out to serve the public at large in a particular area. To be subject to regulation as a public entity, it is generally considered necessary that the supplier of the utility service offer this service to anyone desiring it in the area served by the facilities involved. This has been the ordinary meaning used by the courts in determining whether the property is "devoted to a public use," and is the general standard applied to landlords who supply services to their tenants. Under this standard, the overwhelming majority of courts have held that a landlord who provides such services to its tenants is not subject to regulation as a public utility. However, upon rare occasions some courts have found the landlord to be engaged in a public service and subject to regulation as a public utility. A modern case determined that since the <u>consumers</u> (retail merchants, tenants of a shopping center) devoted their property to a public use, the landlord who provided the service only to the tenants was a public utility.

Some courts look to the role that the utility service plays in the overall scheme of the landlord's enterprises, and use this – either by itself or in conjunction with the public nature of the service – to determine whether the service is subject to utility regulation. Where the landlord's service is found to be a mere incident of some other dominant service (ordinarily, the renting of premises), these courts have refused to treat the service as one subject to utility regulation.

It is not uncommon for commissions charged with regulating public utilities to assert their duty to protect the consumers as a determinant of their jurisdiction. The courts have uniformly rejected the need for consumer protection as the basis for public utility regulation of landlords who supply utility services to their tenants.

75 A.L.R.3d 1204 (footnotes omitted).

The Maryland case found similarly, deciding that the "Public Service Commission does not extend to sales of electricity made by a landlord to its tenants," as a landlord is

"not providing a public service subject to regulation under The Public Service Commission Law." Public Serv. Comm. of Md., 314 A.2d at 689.

This Court agrees with these authorities and finds that the Morgan Defendants are not subject to the jurisdiction of the BPU. The allocation of charges for water are incidental to the dominant service provided by the Morgan Defendants – the leasing of apartments. The Morgan Defendants do not source, store, treat, or sell water to the general public under the authority of the State or a political subdivision. Rather, they simply allocate, by fully disclosed contract, the costs of water they source from a public utility and allow to course through the pipes of their privately owned apartment complex.

In essence, Plaintiff seeks this Court's imprimatur in extending the regulatory reach of the BPU, which governs the operation of statutorily defined public utilities, into how a landlord allocates costs by contract in the landlord/tenant relationship. Plaintiff has cited no direct authority for the proposition that the New Jersey Legislature intended such a result when it passed consumer protection and public utility laws. It should be for the state legislature, by clear and explicit means, and not for this Court to accomplish such a broad expansion of government regulation. As the Morgan Defendants are not subject to BPU regulation, Plaintiff's

allegations that the BPU has prohibited RUBS[20] are not applicable

here and the Court does not address that argument nor make any

ruling as to whether RUBS is in fact prohibited by the BPU.[21]

Plaintiff also makes several allegations that the utility

addendum violates New Jersey law, namely N.J.S.A. 2A:42-88(b)

and N.J.S.A. 2A:42-90(a). N.J.S.A. 2A:42-88(b) sets forth the

grounds for an action by a tenant whose utility services are

being diverted:

> A public officer, a tenant whose utility service has
> been diverted or a utility company providing electric,
> gas or water utility service to a dwelling may maintain
> a proceeding as provided in this act upon the grounds
> (1) that there exists in these dwellings or in housing
> space thereof a wrongful diversion of electric, gas or
> water utility service by the owner or owners or other
> party from a tenant of the dwelling without the consent
> of the tenant, or the use by the owner or other party in

[20] Perhaps ironically, Plaintiff's arguments as to why RUBS is or should be illegal under state law seems at odds with the suitability of her claims for class action. More specifically, Plaintiff argues that RUBS punishes, or acts as a fraud against, tenants who are "frugal" by billing them the same amount for water as tenants who are not "frugal" in their water use. Presumably then the only members of Plaintiff's proposed class are some percentage of the total number of tenants as not all tenants can be in the frugal category. As the amount of water used equals the amount billed by the public utility, if some tenants are overcharged there must be some tenants who enjoy (and therefore have no damages) a water bill that charges less than the water actually used. How Plaintiff would intend to prove which tenants were frugal and which were not is not explained and seems likely to be a difficult burden to overcome.

[21] Plaintiff argues MWAA is a "public water system," as defined in N.J.S.A. 58:12A-3, and as such it is a public utility subject to BPU regulation. Plaintiff has provided no legal authority for this interpretation of the statute and we reject it on the facts as alleged by Plaintiff.

the dwelling without the tenant's consent of electric,
gas or water utility service that is being charged to
the tenant . . . .

N.J.S.A. 2A:42-90(a), in turn, concerns the contents of a

petition.  It provides that the petition should

[s]et forth material facts showing that there exists in
such dwelling or any housing space thereof one or more
of the following:  .  .  .  (2) a wrongful diversion of
electric, gas, or water utility service by the owner or
other party from the tenant of the dwelling without the
consent of the tenant; (3) the use by the owner or other
party in the dwelling without the tenant's consent of
electric, gas, or water utility service that is being
charged to the tenant . . . .

Accordingly, the question is whether RUBS – here, the practice

of charging residents for water based on the number of bedrooms

in the resident's apartment unit – constitutes utility services

being diverted.

The Morgan Defendants argue "there is no allegation that

utilities were physically being siphoned off of a meter, pipe,

or electrical line dedicated to Plaintiff's unit" and thus

"there has been no diversion of utility service under New Jersey

law."  In so arguing, the Morgan Defendants rely on N.J.A.C.

14:3-7.8, which defines "diversion" as "an unauthorized

connection to pipes and/or wiring by which utility service

registers on the tenant customer's meter although such service

is being used by other than the tenant-customer of record

without his or her knowledge or cooperation.  The unauthorized

connection must not be apparent from the premises."

In _Crossman v. Resource MS Stonybrook NJ MFP LLC_, L-1579-14
(N.J. Super. Ct. Law Div. Oct. 9, 2015), the Law Division dealt
with an almost identical issue.  It concluded:

> Under the formula used by defendants, tenants are
> charged for water and sewer based on the square footage
> and occupancy level of their apartment.  Plaintiff
> claims that high volume users benefit from this billing
> method at the expense of low volume users, rather than
> each tenant being billed for actual usage, resulting in
> frugal tenants subsidizing non-frugal tenants for their
> utility use.
>     Put simply, this matter does not involve the
> diversion of water or sewer utility services within the
> meaning of _N.J.S.A._ 2A:42-85 to -96 or _N.J.A.C._ 14:3-
> 7.8.  Instead, the statutes relied upon by plaintiff are
> aimed at addressing utilities that are physically
> diverted 'by unauthorized connection to pipes' serving
> other living units.  This most commonly occurs when a
> tenant is charged for electric service being used by
> another tenant or an owner-occupant as a result of a
> single electric meter or shared electrical circuits
> within the dwelling.

In _Everton v. Morgan Props._, No. L-227-12 (N.J. Super. Ct. Law
Div. June 15, 2012), the Law Division decided similarly.  The
Court agrees with these Law Division decisions that the Morgan
Defendants' practice does not constitute a diversion of
utilities.

Plaintiff also argues that "any measurement for the sale of
utilities or any other good must be preapproved before use."  As
authority Plaintiff cites N.J.S.A. 51:1-83, which states:

> No person shall buy or sell goods or service based on
> weight or measurement by the use of any weight or measure
> which has not been tested and sealed according to the
> provisions of this chapter under penalty of not less
> than $50.00 nor more than $200.00 for each separate

> offense. No contract shall, however, be declared void
> unless one of the contracting parties has been injured
> by the use of such weight or measure.

The heart of Plaintiff's complaint, however, is that there is <u>no</u> weighing or measuring of the water being charged to Plaintiff; rather, it is being allocated based on the number of bedrooms in an apartment. Accordingly, this argument fails as well.

**2. Whether Plaintiff states a claim for a TRA violation against the Morgan Defendants based on the utility addendum (Count Two).**

N.J.S.A. 46:8-48 provides, in pertinent part:

> No landlord shall offer to any tenant or prospective
> tenant or enter into any written lease after the
> effective date of this act which includes a lease
> provision which violates clearly established legal
> rights of tenants or responsibilities of landlords as
> established by the law of this State at the time the
> lease is signed. A tenant shall have the right to
> petition a court of competent jurisdiction to terminate
> a lease containing any such provision.

Consistent with our analysis under the CFA, the Court finds Plaintiff has failed to plead that the utility addendum "violates clearly established legal rights of tenants or responsibilities of landlords as established by the law of this state at the time the lease is signed," and thus the utility addendum does not support a claim under N.J.S.A. 46:8-48. Accordingly, the Court dismisses Plaintiff's TRA claim.

**3. Whether Plaintiff states a claim for civil conspiracy based on the utility addendum (Count Six).**

In her complaint, Plaintiff alleges Defendants entered into

an agreement "with a common design to perpetrate a tort against plaintiffs" or Defendants "acted in concert with one another to perpetrate a tort against plaintiffs."

"In New Jersey, the essential elements of a civil conspiracy are: (1) combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose to be achieved by unlawful means; and (4) special damages." Eli Lilly & Co. v. Roussel Corp., 23 F. Supp. 2d 460, 496 (D.N.J. 1998) (citing Bd. of Educ. of the City of Asbury Park v. Hoek, 168 A.2d 829 (N.J. Super. Ct. App. Div. 1961), rev'd in part on other grounds, 183 A.2d 633 (N.J. 1962)). The "unlawful purpose" alleged here was the allegedly unlawful utility addendum. Having found there was nothing unlawful about the utility addendum, the Court dismisses the civil conspiracy count as it relates to the utility addendum.

**4. Whether Plaintiff states a claim for declaratory judgment based on the utility addendum (Count Seven).**

While Plaintiff pleads Count Seven under New Jersey law,[22]

---

[22]    N.J.S.A. 2A:16-53 provides:

A person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a

32

"the <u>Erie</u> doctrine would mandate that this Court apply the [F]ederal Declaratory Judgment Act." <u>Lilac Dev. Grp., LLC v. Hess Corp.</u>, No. 15-7547, 2016 WL 3267325, at *3 (D.N.J. June 7, 2016). The Federal Declaratory Judgment Act provides, in pertinent part: "[A]ny court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.

Plaintiff is seeking a declaratory judgment that the leases violate New Jersey law, specifically the TRA and the CFA. As the Court finds the utility addendum does not violate these facets of New Jersey law, the Court dismisses Count Seven as it relates to the utility addendum.

**5. Whether Plaintiff can have leave to amend.**

Plaintiff asks the Court to grant leave to amend the complaint in the event the Court finds the complaint deficient. Unless amending as a matter of course, Federal Rule of Civil Procedure 15 provides "a party may amend its pleading only with the opposing party's written consent or the court's leave," which the court should "freely give . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). The Third Circuit

---

declaration of rights, status or other legal relations thereunder.

dictates that amendments should "be granted freely," stating a preference for decisions made "on the merits rather than on technicalities." Dole v. Arco Chem. Co., 921 F.2d 484, 486-87 (3d Cir. 1990).

"[A] refusal of a motion for leave to amend must be justified. Permissible justifications include: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the opposition; (4) repeated failures to correct deficiencies with previous amendments; and (5) futility of the amendment." Riley v. Taylor, 62 F.3d 86, 90 (3d Cir. 1995) (citation omitted). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). The Court finds amendment of the complaint would be futile, as additional pleading will not show that Defendants' use of RUBS violates New Jersey law. Thus, the Court declines to grant leave to amend.

## IV.

Defendant NWP filed an April 26, 2017 Motion to Dismiss Plaintiff's Complaint Pursuant to Rules 12(b)(6) and (9)(b). Only Counts Five, Six, and Seven are asserted against NWP. They consist of a claim under the CFA, a claim of civil conspiracy, and a claim for declaratory judgment all related to the water charges under the utility addendum.

For the same reasons discussed with regard to the Morgan Defendants, the Court will grant NWP's motion to dismiss, as Plaintiff has failed to plead a violation of the CFA or TRA with regard to the utility addendum.  As with the Morgan Defendants, NWP is similarly not subject to regulation by the BPU.  NWP's dominant service is as a billing service provider; the use of its services to ultimately provide water to residents of an apartment complex is incidental.  Moreover, NWP is even further removed from the actual ownership, operation, management, or control, N.J.S.A. 48:2-13(a), of water than the Morgan Defendants.  For all the reasons applicable to the Morgan Defendants, none of Plaintiff's arguments under New Jersey statutory law sufficiently allege that the use of RUBS by a landlord or its billing provider is unlawful.

Following suit, Plaintiff has also failed to plead her claim of civil conspiracy and for declaratory judgment against NWP.  Accordingly, all of Plaintiff's claims against NWP are dismissed.  The Court does not reach NWP's arguments regarding whether Plaintiff's complaint was sufficiently pled under Federal Rule of Civil Procedure 9(b).

**V.**

In conclusion, Counts Two, Five, and Six are dismissed in their entirety.  Count Seven is dismissed to the extent it seeks a declaratory judgment against Defendants based on the utility

addendum.  Counts One, Three, Four, Seven, and Eight will

otherwise proceed through litigation against the Morgan

Defendants.

An appropriate Order will be entered.


Date: _October 27, 2017_____          _s/ Noel L. Hillman_____
At Camden, New Jersey                 NOEL L. HILLMAN, U.S.D.J.